The first case on the call of the docket this morning is agenda number 5, number 126120, People of the State of Illinois v. Ryan James Deroo. Mr. Terry Davidslaw, please proceed. May it please the court, for the record, my name is Terry Davidslaw. I'm of counsel to the office of the State Appellate Defender. I also office with Alan H. Shiffrin and Associates, a law firm in Rolling Meadows and Buffalo Grove, Illinois. May it please the court, the issue before this court here is not whether the trial court properly exercised its discretion to exclude evidence in a DUI case, driving under the influence, but whether the trial court misinterpreted the rule when deciding to exclude evidence. This matter was the trial, the verdict of the jury was affirmed in a split decision by the third district. In our argument, we rely substantially on the dissent of Justice Holbridge. In this case, we ask for review of the appellate court majority decision, which affirmed the jury verdict, to, in the trial court's evidentiary analysis, to admit the defendant's hospital blood test results pursuant to the emergency room exception as set forth under a DUI. This is under section 501.4 of the DUI vehicle code. That would be 625 ILCS 5-11-501.4. This is under section 501.4 of the DUI vehicle code. That would be 625 ILCS 5-11-501.4. 11-501.4 was a statute created back in 1988. It's clear and unrebutted. It's an old statute. It's been around for a while. Part of the statute allows, it says specifically that in an emergency room situation, a blood draw can be admitted as a business records exception to the hearsay rule. It's right there in the statute. The Illinois rule of evidence, 803-6, specifically, and relying on Justice Holbridge, without ambiguity, states that except in criminal cases, except in criminal cases, medical records are admitted as a business records exception. Or a business activity exception. And we'll go into the difference between business activity and a business record. Because it was brought out by the people in their brief. It is clear that, and unrebutted in our position, that the rule, albeit enacted in 2011, is in direct conflict with the statute. They say conflicting theories on how to get a blood draw into evidence on an emergency room hospital basis. This is not a police authorized or law enforcement authorized blood draw. It's not with a warrant. Such as DeRue, in my case, in our case before this court, Mr. DeRue was involved in a one-car accident. Medical assistants came to the scene. They found him hanging out of his driver's side window. He was taken to a hospital. He was hurt. The blood was drawn. Over his objection. But the blood was drawn. The blood result at the trial was admitted as a hearsay document. There was testifying from a nurse, a Wilkerson, a Dr. Gaither. And the lab report was admitted. The doctor testified that he was not aware of, he didn't perform or see the test. He read off the report. So you have an individual who is, his blood draw is admitted as a hearsay document before the jury. It was a jury case. Before the jury. And they heard that this .209 came before the jury. But the argument here in the discussion that I'm making before this court is that this isn't a matter of evidence. This is interpretation of a rule. This case before this court today is an analysis on the separation of powers between the court system and the legislative body. Can we talk about that a little bit? Yes. Certainly the State's argument is that the committee comments to the original rules adopted 10 years ago or so made very clear that the purpose of the rules were to gather together to aggregate rules of evidence and were not meant to aggregate in any way any existing statutes. That's the spirit of the comments, the committee comments to the introduction of the rules, correct? That idea? Yes, Your Honor. But then the rules themselves don't have any committee comments, right? They just kind of sit there. They just say what they have to say. Yes. And what I'm going to direct your attention to is some secondary sources that talk about the interplay between the rules, this rule specifically and the statute. As you may be aware, over the last 10 years, Gina DeVito, a retired justice of the appellate court, a regional member of the committee on evidence, continuing to serve in that capacity and one of the drafters of the rule, this rule and all of the other rules. He writes yearly about the current status of each one of the rules of evidence and compares them to the Federal rules, compares them to any amendments, gathers cases. Sometimes his pamphlet is called the authoritative source on the rules of evidence in Illinois. And you might know that in those, his writings that he produces every year, on page 16, he looks at the rule we're talking about here, 803C, and says that 803C was drafted to be consistent with the rules of evidence. Consistent with Section 115-5C1 of the Code of Criminal Procedure, which in part provides no writing or record made in the regular course of any business shall be admissible as evidenced by the application of the section. If such writing or record has been made by anyone in the regular course of any form of hospital or medical business, or such writing or record has been made by anyone during an investigation of an alleged offense or during an investigation relating to any pending or anticipated litigation of any kind, with certain exceptions that don't apply here. So at least one of the drafters of the rule says that this rule is consistent with another section of the Code of Criminal Procedure. Given that, can you help us understand the interplay between the rule, Section 115-5C1, and Section 11401.4? The rule is, when looking at a rule, you look at the plain construction and language of the rule. And if I keep mentioning Justice Holdred, because my appeal is following his dissent. And clearly, clearly what happened here is the rule says that business records are admissible except in criminal cases. In 2018, the rule was amended right off the bat, except in criminal cases, medical records. I understand. Is that language consistent, as Justice DeVito says? Is the language of the rule, both the original rule and the amended rule, consistent with Section 115-5C1 of the Code of Criminal Procedure? I think how you have to look at this is whether, when you're looking at whether a rule and a statute conflict, part of the analysis is ambiguity. There is nothing ambiguity in the rule. It comes right out of the box, that except in criminal cases. DUI's, Mr. DeRue was convicted of a Class X felony. That's a crime. He was convicted on evidence that came in from a hospital emergency draw as a hearsay document. The rule is straightforward, no ambiguity whatsoever, that it doesn't come in in a criminal case. And the State, in its brief, goes to great lengths, in my opinion, to try to muddy the waters here that, you know, we're going to open up the floodgate for all these DUI's. And that's not going to happen. In fact, all what should happen here is that hospital records should be given the same treatment as the standard under 11-501A1, prove the chain of evidence. Bring in your witnesses. The State has the ability to prove these cases. They can prove these cases. It may be a little bit more difficult, but if a police officer who makes a stop has to prove probable cause, you've got to go through the walk the line, the horizontal gate, all the tests. Then you place him under arrest. Have to observe it for 20 minutes. The machine has to be properly logged, calibrated. It's a heavy burden, and that's how it should be. So in this instance, how this statute is drafted, 11-501.4, which allows these blood draw results without a warrant, it doesn't require a warrant, just a laboratory test that the hospital used in the past, a history. Well, that's not what the rule says. The rule is straightforward. It is not ambiguous, and if I'm repeating myself, I apologize, but I think it's straightforward. Maybe I'm looking at it too simply, but I don't think so. In this instance, the jury heard a blood draw on a hearsay document. It's a crime, a class X felony. Following Justice Holbridge, there is no ambiguity here. The rule should follow. The rule should apply. When a rule and a statute, and that's what Peterson, in short, stands for, I think paragraph 31, Peterson. When a rule and a statute conflict, the rule should prevail. And this, to me, is straight, it's on its face. There's a conflict. Is it the rule or is it the statute? And again, the rule should prevail. Supreme Court rules prevail over state statutes, as long as there is no ambiguity, and that's why the comments, and again, pointed to Justice Holbridge, the comments are not binding unless there's a conflict, unless there's a conflict. The Rennick case, which was cited, it was an attorney had passed away, and the issue was whether his evidence, I'm sorry, discovery deposition could be used as a admission in a legal malpractice case. Well, the committee notes said absolutely not, but the notes didn't prevail. So notes are not binding. The Justice speaks for herself, DeVito. Counsel, does it matter that the rule itself, the Supreme Court adopted both the rule and the commentary by order? This is a little different than a statute. The Supreme Court specifically, by order, adopted or accepted the rules and the commentary. Except the comment, well then, the Supreme Court enters rules, approves rules, and the comments are part of it. The rule is the rule. The rule says, again, several times, the rule says that medical records are accepted medical records. They're excluded in a criminal case. There is no ambiguity. If there was an ambiguity, then the comments can apply, but not in this case. I don't see it. There is no ambiguity. So if the comments, in the event that a statute, a rule doesn't specifically point to a statute, again, if you look at that, and of course, in the state's argument that 11501.4 since 1988 has coexisted with the rule since January 1 of 2011, therefore, well, it's coexisted for decades. Therefore, that makes it right. Well, that doesn't make it right. That means you can never have change. Times change. I would argue that 1988, technology is different. Different times. Why this argument here today and not years ago, I don't know. Can you see a policy reason why the committee that drafted these rules and that the Supreme Court accepted? What's the policy reason for including this language? Can you discern that? I think the clearest would be is that we are in our constitution. Defendants have to be proven, and I thought about this, and my feeling on this, and I'm very passionate about it, is our constitution, the defendants have to be proven guilty by a reasonable doubt. To allow a hearsay business record to come before a jury or a judge, a trial judge, it's, there's confrontation issues. Why would, if it's so clear as you suggest, how do we get here? Why would the committee recommend something that you say is so blatantly in conflict with the policy determined by the legislature for years and years? How did we get here? Quite frankly, when I got this case as an assignment, I looked at this, and I've been a practitioner for 39 years, and I don't know why this has never been brought up before this court before today's date. To me, it stood out. It stands out. Mr. Slaw? Yes, Your Honor. Before your time is up, I just wanted to ask about the unintended consequences of something like this. If we should permit this, then would people who are in accidents, would they be thinking that they're not going to allow the hospital to draw blood, urine, etc., etc., because they're afraid that if they were going to be ultimately used against them at some time? I mean, they haven't given consent necessarily, and I think in this case, he objected to the police draw. But as to the hospital draw, perhaps he never even thought that he, this would be used against him at later on. But quite frankly, perhaps people in situations like that will not permit it if they know it will be used against them. Is that something that you've thought about? Well, Eubanks' decision, get a warrant, Fourth Amendment. Technology, as we've learned this last year, technology's changed. You can have hearings to get a warrant via Zoom. I mean, things change. Things change. And Mr. Daru wasn't going anywhere. There was no agency. Get a warrant. If he doesn't consent, then get a warrant. That's how I respond. Thank you. Thank you.  Mr. Joshua Michael Schneider. May it please the court, counsel, I'm Assistant Attorney General Josh Schneider on behalf of the people of the state of Illinois. My colleague is correct. This is a very old statute. It was enacted in 1988, and there doesn't seem to be any dispute that from 1988 to 2010, the results of blood alcohol tests performed in the course of providing emergency medical treatment were properly admitted in DUI prosecutions under Section 11-501.4. And that was notwithstanding Section 115-5, which was the statute that governed the admission of hearsay statements under the business record exception in criminal cases, which excluded medical records from admission as business records. So your answer to my question is, could you answer my question? What is the relationship between the two statutes? Sure. So the relationship between the two statutes is the same as the relationship between Rule 803-6 and 11-501.4, which is they're simply separate hearsay exceptions that rely on substantively different bases for admission and impose correspondingly substantively different foundation requirements. So when construing this rule and when construing the prior 115-5, it's important to construe it in context. It is a hearsay exception. And hearsay exceptions speak to admission on that particular ground. So in the same way that we would never construe the hearsay exception for excited utterances as somehow excluding dying declarations or excluding business records because the business record doesn't satisfy the requirements for an excited utterance, we shouldn't construe the business record exception and its foundational requirements for admission as a business record as speaking to whether something is admissible under a different hearsay exception. Hearsay exceptions keep their hands to themselves. They say, this is what you have to do to be admitted under me, and if it's not admissible under me, then you have to look elsewhere. But as this Court recognized in People v. House back in 2000 or, I'm sorry, 1990, I think it was, whether a particular hearsay statement is admissible under a particular hearsay exception doesn't tell us really anything about whether it's inadmissible altogether. It just tells us whether it's admissible on that particular ground. So in that case, it was a statement that failed to satisfy the foundational requirements for admission as a dying declaration, but just because it didn't satisfy that, it didn't mean that it was inadmissible altogether. The Court then said, well, is it admissible as an excited utterance? And because it was, it was properly admitted under that hearsay exception. So here we simply have two different rather than two conflicting hearsay exceptions. Of course, the reason that that hearsay is generally excluded is that we can't test the reliability of that out-of-court statement through cross-examination. But each hearsay exception has its own basis for presuming that a particular set of circumstances provides sufficient guarantees of reliability to justify admission, notwithstanding the unavailability of testing through cross-examination. And so because each hearsay exception has its own basis for presuming reliability, each hearsay exception has its own set of foundational requirements. And they are independent. So the business record exception, or as it's known under 8036, the exception for records of regularly conducted activity, the basis for presuming that those is the regularity and timeliness of the record-keeping system rather than any feature of the individual record itself. Whereas the basis for admission of a hearsay statement under 11-501.4 has nothing to do with the record-keeping system. We presume that the medical, that the blood test result or the chemical test result is reliable not because of the system within which it's maintained, but rather the purpose of providing emergency medical treatment in an emergency room without any interference from law enforcement. And that it was performed by the laboratory that the hospital uses for conducting emergency medical testing. The theory being that if these test results are reliable enough for an emergency room doctor to make what are frequently going to be life and death decisions regarding the provision of emergency medical treatment, they're certainly reliable enough to at least be considered by a fact finder. Because, of course, admission doesn't mean that they're going to be credited. They can still be tested through all sorts of, well, you didn't actually observe this, and do we have any evidence that this particular ER's machine had been calibrated recently? There are all kinds of arguments that can go to weight. We're just talking about the threshold question of can the fact finder even consider it? And the analysis is the same whether it's a hearsay statement that was oral or written. Just as something can be admissible as an excited utterance but not a dying declaration where it's an oral statement, the fact that a hearsay statement is written doesn't change the analysis at all. So, for example, if a doctor sees a patient and they create a report that is a medical record that is not admissible as a business record under the business record exception of 8036, but that doesn't mean that it couldn't be admitted as a recorded recollection under 8035 if it satisfies the independent foundational requirements for admission under that section. The fact that it's written down doesn't change the analysis at all. But is there something with regard to the actual defendant's consent? If the defendant goes into a doctor's office and the doctor takes records and things like that and the patient generally consents to whatever test needed to be taken, in an emergency situation like this, the only thing that the defendant said with regard that we know of is that he refused to have a blood test by the police. Okay. So is that going to be a situation where for any test that is it assumed that a patient going in an emergency room consents to all the tests? Well, so there's no question that there's no Fourth Amendment problem with an ER taking blood and doing testing on it. So the question really then becomes a policy question, is are we concerned that this will deter people from consenting to blood testing in emergency medical situations in cases where there isn't implied consent? Because obviously frequently if someone is dragged from an upside-down car in a roadside ditch, they're not in a condition to verbally consent to anything. But you said that whatever is taken are medical records, actually, in the emergency room. And what's the difference between the doctor's office and the emergency room than if those are medical, considered medical records? So, again, this is a question of policy. I presume that the General Assembly believe that emergency room testing, which is done on-site by the laboratory that the hospital uses for that testing, are simply more reliable. And also, frankly, it's... More reliable than what? The police officer's request for a blood test? Well, a police officer's request for a blood test can be refused, and it's subject to Fourth Amendment restrictions. And a police officer's request for blood testing isn't necessarily done within a hospital setting. So when a police officer asks to take blood, if that blood is taken at the hospital and is then sent off to the State's laboratory for testing, we don't have the same sorts of guarantees that the State's laboratory, which is used for testing in criminal cases, is as reliable as the testing that is used in the emergency room. It's not about the reliability that I'm asking. I'm asking about the patient's consent. So is it presumed that you're saying that patients go into an emergency room, that they consent automatically to all the tests that are needed? No. If they're unconscious, there is... Because they end up in a medical record. Well, whether something ends up in a medical record is independent of the question of whether it was consented to. All kinds of things can be in a medical record that the patient didn't consent to, right? The patient's blood pressure, the thermometer reading, all kinds of things can end up in a patient's record, and we don't think of consent as being relevant. But ultimately, consent really isn't relevant to the question of whether something is properly admitted under 11501.4, because the question for admissibility, where there isn't a Fourth Amendment concern, is a question of whether it satisfies the foundational requirements for admission under a particular hearsay exception. And here, there is no question that from 1988 to 2010, and then after the codification of the rules subsequent to that, blood test results performed in the course of providing emergency medical treatment are admissible if certain foundational requirements are demonstrated, that law enforcement was not involved in any way, that they were ordered in the course of providing emergency medical treatment, and that they were performed by the laboratory that the hospital uses to perform those testings. So to the extent that there's any concern that this will provide a disincentive to people to consent to necessary medical testing when they're in the ER, first of all, we'd note that this has been the law for about 30 years. So that disincentive is already baked into the system. So to the extent that there's a disincentive, it's already there and active. Do we know how many times that the medical records were used for blood tests in a criminal matter? That emergency room? In the 30 years. I don't, Your Honor. I would imagine that it's quite frequent, since frequently – again, the context in which this is coming up is sort of DUI prosecution. So someone was in a car crash, and they're brought to the hospital for emergency medical treatment. So frequently that will be a source of valuable evidence that they are intoxicated and that their blood alcohol content was above the legal limit. So I'd imagine that it happens very regularly. To the extent that it is discouraging people from consenting to necessary blood testing, that disincentive was already provided back in 1988 and has continued this whole time. So construing Rule 803.6 consistently with Section 115-5 as simply a separate, independent hearsay exception wouldn't create any new disincentive to concede a consent to emergency room blood testing. Counsel, do we have to rely on the committee comments to the rule? We don't have to, but there's very good reason to, as Your Honor noted. And the Court did accept the commentary when it adopted the rules, and presumably the Court accepted the commentary because the Court believed that it accurately reflected the Court's intent in adopting the rules. And it's important also to consider the commentary because when we're construing a rule or a statute, that construction has to be within the context. It can't be acontextual. We have to look at the relevant context. If a statute is amending a prior statute, we need to consider the statute that exists beforehand so that we can understand what the changes were intended to do. If a rule codifies preexisting law, we need to consider that preexisting law to understand what this new codification means. We're not starting from a blank slate. And that's exactly what happened here. The commentary and the Court in its order adopting the rules and accepting the commentary expressly said that it had created the Special Committee on Evidence for the purpose of codifying the law of evidence in Illinois. So the question is, in 2010, when the Court adopted the rules of evidence that codified the existing law, including Section 115-5's business record exception and the associated medical record exclusion under that exception, did the Court intend without any comment and for no particular reason to upend decades of settled law regarding the admissibility of emergency room blood test results by invalidating Section 11-5 of 1.4? And the answer is no. The Court did not, in codifying the law of Illinois, intend to change the law of Illinois. And the commentary also makes that clear when it talks about, first of all, it says that, quote, there is no current statutory rule of evidence that is in conflict with any rule contained in the Illinois rules of evidence. But it then goes on to specify a potential conflict in Section 2 of the commentary. They note that there is a potential conflict between Rule 609 and the previous law governing the admissibility of juvenile, prior juvenile adjudications as impeachment material. But the rules specify, clarify that to the extent there's a conflict, that conflict is based on preexisting precedent. It's not the adoption of the rules themselves that invalidate any prior law. These are the rules of this Court, adopted by this Court. Could this Court, in an opinion, modify those, the current rules to include the language of 11-5 of 1.4? It could. It certainly could. I don't know that it's necessary to do so. But to the extent that there's a – there doesn't seem to be confusion in the courts below, again, for this is the first time this has come up. And the appellate court got it right, although there was a dissent. And this Court's opinion here would further clarify that the law as it has been for the last 30 years without the need to amend the rules. But the Court certainly could. I think the reason that it wasn't included in the first instance is that, again, looking at the commentary, the purpose of the rules was to codify the basic rules of evidence, the most frequently used rules of evidence, to create a handy reference for practitioners and trial courts. It did not include every – every niche evidentiary rule, because that would be more like a treatise, and that would be a much more unwieldy document for practitioners and courts to use. And this is – this is just that sort of corner case rule, where it has very limited application. It's only a particular type of record and a particular type of prosecution that meets particular types of foundation requirements. So it's not at all surprising that the Evidence Commission didn't see fit to include this particular rule in the codification. But the Court certainly could add it if it wanted. Well, at least the police won't have to ask anymore, potentially, if they need to – if they can consent to a blood test, because they can get it in anyway. Right. And that's – and that's always been the case. Now, it is not always the case that someone who is in a car accident is taken to the emergency room. So there are still plenty of circumstances where the police, if they want to do a chemical test, will need to ask. Well, I'm talking about the situation. Sure, yes. In a situation where someone is in a crash, they're pulled out of their car, upside down, through the driver's side window, and rushed to the ER, that is a case where the blood test will be admissible. Assuming, of course, that law enforcement had no involvement in – in requesting the test. Of course, this requires that the testing be entirely driven by the medical needs of the patient rather than any interference by law enforcement. But that is true. So unless there are any further questions, for those reasons and, of course, the ones in our brief, we ask that the Court affirm the judgment of the appellate court. Thank you. Thank you, Mr. Schneider. Mr. Slock, you may proceed. In rebuttal and in closing, the question was asked to me by Justice Syth, what was the policy behind 8036? And I'd like to opine to the Court that the main policy is to prevent – one of the main policies is to prevent the convention of defendants' right to privacy. That's a concern. Although there was cases early on in the process of 11-501.4 where the HIPAA argument was raised, but those were all pre-Illinois Rules of Evidence. Of course, the issue of self-incrimination, 8036 prevents that. Counsel, talking about the policy issue, 11-501.4, the legislature, that was a public policy enactment, and that was recognizing the confluence of confrontation issues along with implied consent laws as well as the concept that driving in Illinois is a privilege. That law was in effect when the rules were adopted. Are you saying that our rule specifically was making a public policy determination to revoke 11-501.4? I think – I believe that the rule, on its face, it's plain meaning. In essence, it says, yes. I mean, to me, like I've said it before, it's clear. 8036 says, except in criminal cases. It's not ambiguous. Why it's gone all these years without being brought before this court, I don't have an answer to that. But we're here today. We're here today. We're bringing this up. And in closing, if – and we're asking for a reversal, is that if there is no reversal, the rule needs to be changed. The rule is clear. The rule is clear. Medical records are not admissible as a hearsay exception in a criminal case. They just aren't. And all these years and all these cases, I can't speak for the past, but we're here today. And based on Peterson, the statute and the rule conflict. The rule should prevail. It's drafted by this court. The court looked into this rule on September 28th of 2018. I'm not sure why the one sentence was moved from the end of the paragraph to the first sentence. It was. Somebody looked at it. The court did. And Hutchinson was already in effect at that point for five years. It was after Peterson. After Peterson. The court wanted to change that rule. They could have changed it then. They didn't. In fact, in my opinion, it enhanced it right in front. First sentence. I'm asking for a reversal. Thank you. Any questions? I'm sorry. I'm sorry. Thank you very much, Mr. Slaw. Case number 126120. People of the State of Illinois v. Ryan James DeRue. We'll be taking your advisement as number five. Thank you, Mr. Slaw. Thank you, Mr. Schneider.